Case No. 22-5050 et al. Angela M. Cox, defendant, v. Kilolo Kijakazi, Acting Commissioner, Social Security Administration. Ms. Spena, for the defendant. Ms. Klein, for the affiliate. Good morning, Council. Ms. Spena, please proceed when you're ready. Good morning. May it please the Court, I'm Tina Baena. I'm here today representing Ms. Spena in the courtroom today. I wanted to make clear a particular point. Listings are special at the Social Security Administration. They are automatic if they are objective, as was Listing 1205C for intellectual disability. There's no discretion. The Administrative Law Judge, the other adjudicating officers at the state agency, the doctors, have no 16501 or 16920 A&T, there is a regulatory guarantee. We will, we will find you disabled if you be listed and file an application and of course meet the eligibility requirements, the eligibility requirements of income and resources or insurance. Either way, it's also consistent with the Supreme Court's ruling in Bowen v. Young. Ms. Cox, a medalist, she filed an application and she was denied. It's a first level of adjudication in front of the doctor. They neglected their duty. They had in front of them the opinion of a consultant and examiner that she was disabled. Not just that she had deficits, she was disabled. They ignored that. They ignored the findings of the IQ test ballot, IQ testing, and simply made her wait for years until the agency changed its rules. The agency has no retroactive rulemaking. That's quite clear. Nonetheless, it applied, it revised its little listings and it applied those to pending cases or remaining cases and continuing disability review cases. They violated the APA. They did not put any of that out for notice and comment. None of it. Let me ask you, there's a statutory definition of disability, which the agency obviously cannot depart from. There's a statutory definition of disability that the agency obviously is bound by. The claimant is considered disabled if she is unable to participate in any substantial gainful activity due to a medically determinable physical or mental impairment. You don't dispute that that's the governing standard of disability? Yes, Your Honor. The listings are there. I'm just saying, do you accept that that's the controlling definition of disability that everybody has to meet and the listings have been a prior way of meeting that? Yes, they are an official statement of levels of medical severity. But everyone still has to meet the statutory standard. It was a means of doing so. They stand, they are a presumption that, they are a binding presumption that an individual, that individual cannot work. I can give you an example. I'm just trying to understand your legal position. So your legal position is you accept that that is the definition of disability that necessarily bound the agency because it was passed by Congress. That's the statute. And you're not claiming that someone who doesn't meet the statutory definition of disability should still get benefits. Are you? No. Right. So at bottom, everyone has to be found to meet that statutory definition of disability. I'm just trying to understand your position. Your position is that listings are sort of an agency sort of predetermination that if you meet this, one of these criteria, you will necessarily meet the statutory definition. Exactly so. But your clients still must at bottom, one way or the other, meet the statutory definition. Is there that stating that presumption, we will find you disabled. As long as she can still show that she meets the statutory definition of disability, she will get. Your automatics. People meet it without, there's other ways they're right. Some people meet it without going through the listings and they still, as long as they show that they meet the statutory definition of disability, they get the benefits. The listings are the presumption. I understand, but some people don't fall within the listings, I assume. And so, but they still can show that they meet the statutory definition of disability by going through the other factors. If they do, if they do not meet a listing, then yes, they proceed through the process. And appear before an administrator. So everybody in the end has to meet the statutory definition. The sequential evaluation process. And makes the determination that given the symptoms of the various impairments, this person cannot work. In this case, of course, the administrative law judge has characterized the evidence. So his final determination was it. But yes, that's it. So your point is, even with her without listings, she meets the definition and to the extent the ALJ found otherwise here, it was because of error. If you meet a listing, you are disabled. No, my question is a little different than that. My question is your argument, as I understand it, is she should be disqualified on two grounds. She met the listing. And even if you put the listings aside, she came in with the evidence that shows she meets the statutory definition of disability. And so it's just a question of how one goes about proving that you meet the statutory definition of disability. Listing or evidence. Additional evidence or separate evidence. There's two paths. Listing or an ALJ decision. So they left. She still had the opportunity, even under the new regulations, to show that she met the statutory definition. That's why you have the arguments about the mistakes that the ALJ made. Right? In theory, yes, ma'am. In theory, in reality, you have arguments that the ALJ also misweighed evidence and things like that. Who did not. And so I'm having some difficulty agreeing that the opportunity, the radical opportunity, of course, hypothetical. But we have an ALJ here who disregarded the listing, disregarded this course precedence in Butler. So that's my difficulty with agreeing. No, I'm just asking your position is she would. I'm only asking about your position is that she would meet it either way. Of course. Listing or evidence. Yeah. Without the listing, with evidence, she would meet it. And so the question is. Right. The reason here was just errors by the ALJ. And then talk to me about the notice and comment period. It was 105 days. There were, you know, several comments in that regard. But you're suggesting that there wasn't really notice in such that there could be a logical. I'm sorry, I'm having difficulty hearing you. The notice and comment period was 105 days. Several comments that came out. But you're suggesting that there wasn't sufficient notice such that there could be a logical outgrowth of this rule. I'm still having trouble hearing you. I'm asking you about your position with respect to notice. With respect to this new listing rule. There was 105 day comment period and several comments made. But you still suggest that this rule would not be a logical outwards. We do not know who made those comments. They could have come from within the agency. But that's problem number one from our perspective. However, the fact that somebody figured it out. Actually, they did. Somebody made a different suggestion. To the agency that the agency had not. Proposed, in fact, they opposed the office. And I believe the precedence in. Make it clear that when they did see. Specifically proposes as they did here. To keep a regulation, they cannot simply reverse. Here, they did not put that proposition out. So, I think that this new rule. For notice of comment, it depended entirely on. The possibility that somebody might notice. Somebody did, but that does not. Allow the agency. Notice. Opportunity for comment obligation. Secondly. There's no. No explanation. No explanation. It does not. Address how. They considered various, or even if they did consider various alternatives. And that's only. With respect to listing 1205 C. The agency never mentioned. That they were taking away the right. Of this individual. To rely on her possible and contradicted testimony. No way. They never mentioned. Taking away the presumption. Under the presumption. Under the presumption. That IQ levels are stable. Over a lifetime. Contra. Make sure there's no additional questions for you at this time. We'll give you a little bit of time for rebuttal. We'll hear from the government. Okay. It's.   It's. It's. It's. I'll be brief and I want to address the court's questions. Okay. Judge. Yes, as the Supreme court in the effort case that we. I emphasize. Listings are not comprehensive. And anyone who is not. Disabled by virtue of meeting a listing. The inquiry at each stage. Of the adjudication, whether it's the state level stage of the stage. And just proceeds to residual capacity. The vocational factors steps four and five. And, of course, the agency could not change the statutory standard. That determines whether or not. Benefits will be awarded. This very briefly as. Judge Nichols and judge is the book explained. The agency is long standing policy. Is to instruct its adjudicators at every level. To use the most up-to-date. These are the most up-to-date medical standards. When they're adjudicating adjudicating an application. Or benefits. And that's a permissible policy under the broad discretion that Congress. Gave to the administration to. Basically oversee this gigantic apparatus of processing. Applications for benefits. And it is not retroactive in the land graph sense. For the reasons that were set up by judge Nichols. And in our brief. You don't dispute that. Or do you dispute that had the listings been applied. That she would have been entitled to benefits. We do this. We've assumed we're not asking this court to decide that. But there's a chart. In our district court brief on page 7, it sets out side by side. The. Central requirements under the prior listing 1205. And under the 2017 version. And as we explained in our brief. It was always a requirement to show deficits and adaptive function. That requirement, even as part of the listings. Yes, yes, as part of listing 1205. The same, the name was different intellectual disorder. At the time was called mental retardation and the name got changed. But the substantive showing. Of deficits and adaptive functioning. Was present under the unit. She met the sort of IQ range. Yes, that would not automatically get her benefits. And I'm not suggesting there was no change. There's more specificity. In the 2017 version of that listing. 12.05. That talks about the severity and has some more detail. Our point. We're not asking this court to decide it. We're just making the point that the administrative law judge. Went through and found. Like address each of the areas of deficits and adaptive functioning. And made findings with respect to those. So, while we are assuming for purposes of the retroactivity analysis. That this change made a difference. We're not conceding. And. Assume that though, there's a national mining Congress. We had language that said, where a rule changes the law in a way that. Adversely affects the party's prospects. Excuse me, success on the merits of the claim. It may operate retroactively. So, if you're assuming for purposes of this case, that it definitely. For success on the merits, not just your prospects, but actual success on the merits. How is that standard not met? Because that language from national mining, which is what the district. Relied on in this case. Has to be understood in the context of the statute. The particular program that was an issue there. This court did not and could not change. This court's prior decisions in Chad more the line that we cite in our brief. That said, an applicant for government benefits. Has no vested right while the application is pending. And that's just the general principle also referenced by judge Easterbrook. In the case. National mining was different, potentially unique because. The benefits were being paid by the lawyer. So, the whole issue in the case was. The question was, could the department of labor. Apply. Retroactive in a sense retroactively applying new rules. In a way that increased the liability. Of the employers that the coal mine operators and their insurance. So, the, if you look back at the briefing, the whole fighting, but there was no dispute. That would have implicated land graph. And the fighting was over whether there were or were not material changes to the regulations. But you can't. Take that language and pull it out of the unusual context. Context. In which the benefits of issue were payable by the private employer. That's a question about the. Treating physician part of the challenge. So, under the regulations. They presuppose that the treating physicians. Opinion. Can have greater weight than somebody else. And I just didn't see anything in the. Treatment. Of the treating physician that. Hey, acknowledge that it was a treating physician. And then be wrestled with whether, because it's the treating. Position, I guess it was. Whether Dr was a treating physician. Notwithstanding the fact of treating physician status. There still was going to be a discount of those views for the reasons that were set up. All right, so I took it as implicit that the understood that was the treating physician because the then did go through and explain why. She was being given partial weight rather than. You know, greater weight as would be expected of a treating physician. And wasn't that wasn't there similar language about other opinions to the partial weight went to other positions too. It just didn't seem like there was a distinction. Based on treating physicians. I don't believe this was the focus of the appeal and I don't. Recall the specifics, but as we understood it, yes, of course. Yeah, this was a treating physician, but said that this was with respect to herself. Yeah, there were contradictions in her own. I don't remember his testimony or testimony and medical records in addition to contradictions with other positions and other evidence. But we would not be here if the only issue with the treating physician. So I want to make sure the court is satisfied as to retroactivity, which is why we appealed. And I just want to make sure I address that child's your question about logical outgrowth. And to just go back to this chart, the changes to this listing, they're certainly important. It is important to align the listings with the up to date. Categories that are used by the American Psychological Association, the outside experts and those experts, their own treatment that informs what the clinical records look like. So this is important, but the changes were still comparatively modest. And what happened was after the agency made various reorganization to this particular listing, 0.05 comments came in and said, paragraph C is now unnecessary. And you should streamline this listing to avoid complicating the process for the adjudicator. And that's why I mean, it's certainly a logical outgrowth. If the agency takes into account the fact that commentators who are being asked to comment on what do you think of this proposal, say, do this thing to simplify the work of the adjudicator, that it's reasonable. It's not a logical outgrowth of the notice that says we will not change 0.05C except for minor editorial adjustments. It's language to that effect is what was used. We will not be changing it. And you are assuming for purposes of this argument, so I assume you're assuming it for purposes of the whole argument, that she would have won under this provision that's now been eliminated. That doesn't seem at all like a logical outgrowth of a we're not changing it. And it seems like a profoundly substantive change from the perspective of the claimants. The premise is very wrong. Obviously, there was no statement. We will not change paragraph C. But also, again, it was only minor, only minor editorial. No, but this is going back to the other point. I think that the plaintiff is missing that all along there was a requirement to show deficits and adaptive function. Things got moved around. And there was more specificity as to that showing. But that was always going to be a required showing, even if you applied the old version of the listing. But it wouldn't be enough under the new. You may need deficits and adaptive functioning, but that wouldn't get you all the way home under the listings, right, because you still have to show more. As before, you had to show the IQ testing. That's not a change. But I'm taking that as a given, too. So the IQ range plus deficits adaptive functioning under the new provision, there's still you have to show extreme limitation of one or mark limitation of two of the following areas of mental functioning and then the list ABC or D. Those are the deficits and adaptive functioning. The terminology has changed, and it is more specific. It's to describe the level of severity. It had to be extreme in one or two. But this is all just deficits and adaptive function. I just want to make sure that the court understands, because I know it's complicated. This was in many ways a reorganization that made C unnecessary. But I thought we're taking as a given that the change. I know there was some reorganization and some encapsulation. But I thought we're taking as a given that there's a delta between what existed pre-2017 listings and now. And there were things that would have automatically qualified you as disabled under the listings previously. It wouldn't necessarily get you all the way home now. Yes. With the pause on automatically, there had to be a showing of deficits and adaptive functioning. And that's why, in response to her argument that there should be a remand for awarded benefits, we said no. The ALJ addressed deficits and adaptive functioning and said. Right. I mean, we may not remand to get to automatically give benefits, but just in terms of whether somebody's worse off. I thought we're taking it as a given that somebody could be worse off under the new listings than the old ones. They might still be able to satisfy steps four and five, even if they don't automatically get in on the listings. I get that. But in terms of automatically getting in under the listings, somebody could be worse off with the new approach than the previous one. Yes, we're taking that as a given. It is, of course, also true that, in general, there's nothing systematic about updating the medical listings that disadvantages claimants as a class. And so there may well be many claimants who say, wait, you added a listing. You should be adjudicating my application with the benefit. And then just finally, the broad. Just to be clear, someone prior to 2017, if they showed. And they met the for one of the listings of the IQ range plus deficits and adaptive functioning, they showed both of those. You know, go directly to benefits, right? Automatically, we get better. There was another category. It's in the chart. It's an additional impairment that affects the ability to write. And they also have to show us before 20 or 22 or whatever that was. But they do that. And then now someone can make that exact same showing. They wouldn't get benefits automatically. They still have to go through steps four and five or at least step five. We're assuming that the additional specificity for the deficits and adaptive functioning category may actually make a difference for someone. We don't still have to go through steps four and five. Yes, we're assuming the vocational step. And then you go through steps one five and can show that I nonetheless meet the. So there are there's a group of people's theory, at least a group of people who would have qualified before. No longer qualify. Right. Like, like the other courts, we are assuming for purposes of this appeal. Yes, that that could happen. But we're also making the more general point that there's nothing about updating medical listings that systematically disadvantages claimants. And the final point, if I may, is that as the Supreme Court repeatedly admonished. This is a gigantic and very complicated adjudicatory system. And so efficiency, maybe in some context, doesn't matter very much. But for the Social Security Administration, keeping things simple and fast for the adjudicators is very important because of how long people wait to get a decision, even at the first level on their applications for benefits. So the recent statistics were five and a half months at that first level where a very large percentage of grants. And so this is part of the reason the Supreme Court has consistently emphasized that the Social Security Administration by statute has really broad discretion to figure out the mechanisms, the procedures by which its adjudicators determine whether someone meets the statutory requirements. So you don't argue that any different retroactivity analysis applies in this context, do you? Because it's actually hard, really hard to figure out how to do it for exactly the reason you said. Changes, same change can help someone and hurt someone else. And so how do we decide under a Landgraf type analysis whether. So the Landgraf analysis here should be straightforward. We're not increasing liability. We're not attaching new adverse consequences to primary conduct that happened in the past. And so the only issue is the one Judge Nichols walked through about vested rights. And under this court's decision in Chadmore and the case it cites, there is no vested right when you just have an application for government benefits. What are the consequences of having performed some work before change? So I'm glad the court asked this question. This is where the distinction between Social Security Disability Insurance and SSI is potentially relevant. But I want to explain why it shouldn't be. So this case is Social Security SSI. This is the pure welfare program that was added in the 70s. The Supreme Court, though, cautioned in Fleming versus Nestor and in a way in Matthews versus Eldridge, that even when you're talking about the category of workers who paid into the system and for that reason, became entitled to either retirement benefits was Fleming versus Nestor or disability insurance benefits was Matthews versus Eldridge. The court still cautioned about not importing, at least at a constitutional level, these accrued property rights notions. That's when the Supreme Court said this would freeze up a system that depends upon flexibility in a way that was not intended. So the issue is not before the court here. But I just want to caution that the court should not accidentally suggest that there's nothing the Social Security Administration could do to streamline what are called its continuing disability reviews that it's required to do by statute, which is once someone is a recipient, you know, it's been found entitled, there's nonetheless a periodic, you know, into whether that person should still be getting benefits. Is there anything the Social Security Administration could do with respect to changing the listings that would be retroactive? Not, I mean, the Social Security Administration's policy is that at that continuing disability stage review, changes in the listings are not considered. So there's nothing, you know, barring a hypothetical change to that policy that could be done to the listings that would be retroactive. So no matter how much the listings change. Correct. Because the listings couldn't be retroactive. The way the Supreme Court put it is this is for, you know, initial applicants. It's a way of streamlining the adjudicators. Right, so to cut to the chase, there's nothing you could do, no matter how much more restrictive the listings got in terms of automatically qualifying as disabled without having to go through steps four and five. It definitionally can't be retroactive. Correct. And just to understand, I want to follow up on Judge Millett's question. So as I understand the assumptions on which we're resolving this case, it has nothing to do with steps four and five. Because under step three, the assumption on which we're considering the case is that pre-2017, someone might have qualified as disabled. Post-2017, that same person won't automatically qualify as disabled for step three. They might still qualify as disabled under step four and five, but they're worse off in a way that could be outcome determinative. Because if they don't qualify under four and five, they would have qualified pre-2017 under step three. Post-2017, they don't qualify. Yeah, those are the assumptions.  And Judge Nichols' decision. And your argument is it can't be retroactive because it's just the automatic qualification under the listings and definitionally that can never be retroactive. Correct. Thank you. Thank you, counsel. And I will give you two minutes for rebuttal. Okay. Streamlining has absolutely nothing to do with depriving my client of her right. Her right to make her prima facie case on her uncontradicted plausible testimony. That is guaranteed by Gilbert and Kelly. She had a right the minute she filed that application. And her IQ scores were confirmed. She had a right to her finding of disability. They made her wait. People wait, but they don't wait because they don't get decisions they were supposed to get a lot of the time. Regulations guarantee if you are, if your impairment meets the listing, you are disabled. And we will make that finding if they did not. The notice of comment. There are no reason for explanations. There's no reason for taking away her right to plausible uncontradicted testimony. There's no reason for taking away the presumption of IQ. None of that was ever discussed by the agency. This was not. Anything had nothing to do with streamlining. This had to do with cutting the budget. That's what it is. Thank you. Thank you, counsel. Thank you to both counsel. We'll take this case under submission. Thank you.
judges: Srinivasan, Millett, Childs